IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER THORNE,
    Plaintiff,

vs.

JOHN PALMER, LAVENDER BARKLEY, MARTY MOULTON, JESSICA PAGE, NORMAN DUNAWAY, JEFFREY BROWN, FREDERICA HILL, and TINA HARRELL, in their individual capacities,
    Defendants.

Case No. 5:12-cv-261/RS/CJK

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff CHRISTOPHER THORNE sues Defendants and alleges:

1. This is an action for damages for violations of the Eighth and Fourteenth Amendments to the United States Constitution.

2. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, et seq.

3. The Plaintiff's claim for relief is predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorize the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

4. Venue and jurisdiction are proper in this Court because the wrongful acts complained of occurred within the Northern District of Florida.

1

## Parties

5. At all times material hereto, Plaintiff CHRISTOPHER THORNE was an inmate in the care and custody of the Florida Department of Corrections.

6. At all times material hereto, Defendant JOHN PALMER was Warden of Apalachee Correctional Institution, and was the Florida Department of Corrections policymaker directly charged with care and custody of prisoners at Apalachee Correctional Institution. He is sued individually.

7. At all times material hereto, Defendant LAVENDER BARKLEY was a sergeant at Apalachee Correctional Institution, acting within the course and scope of his employment and under color of law. He is sued in his individual capacity.

8. At all times material hereto, Defendant MARTY MOULTON was a corrections officer at Apalachee Correctional Institution, acting within the course and scope of his employment and under color of law. He is sued in his individual capacity.

9. At all times material hereto, Defendant JESSICA PAGE was a corrections officer at Apalachee Correctional Institution, acting within the course and scope of her employment and under color of law. She is sued in her individual capacity.

10. At all times material hereto, Defendant NORMAN DUNAWAY was a corrections officer at Apalachee Correctional Institution, acting within the course and scope of his employment and under color of law. He is sued in his individual capacity.

11. At all times material hereto, Defendant JEFFREY BROWN was a corrections officer at Apalachee Correctional Institution, acting within the course and scope of

his employment and under color of law. He is sued in his individual capacity.

12. At all times material hereto, Defendant TINA HARRELL was a nurse at Apalachee Correctional Institution, acting within the course and scope of her employment and under color of law. She is sued in her individual capacity.

13. At all times material hereto, Defendant FREDERICA HILL was a nurse at Apalachee Correctional Institution, acting within the course and scope of her employment and under color of law. She is sued in her individual capacity.

## Common Allegations of Fact

14. On December 29, 2008, at Apalachee Correctional Institution, Plaintiff Christopher. Thorne started to shake uncontrollably for no apparent reason.

15. Alarmed and afraid, he declared a medical emergency.

16. Mr. Thorne's dorm officer called for an escort and Mr. Thorne was escorted to the triage room in the medical building.

17. When he got to the medical department, Mr. Thorne's condition was noted by Nurse Tina Harrell who told him his condition was not an emergency.

18. Mr. Thorne was surprised by this reaction to his still-unexplained symptoms and asked Nurse Harrell if she was kidding.

19. At this, Corrections Officer Jessica Page told Mr. Thorne to turn around and face the wall and that he had just earned himself a Disciplinary Report (DR).

20. Officer Page called for two security officers, Sgt. Lavander Barkley and Corrections Officer Marty Moulton put on latex gloves, handcuffed Mr. Thorne

behind his back and escorted him into the hallway.

21. Officer Page understood that Moulton and Barkley were there to "tune-up" Mr. Thorne for showing disrespect to staff and not to escort him to housing.

22. It was a common practice at Apalachee Correctional Institution for security officers to "tune up" or beat inmates who appeared to disrespect staff.

23. In Florida prisons, beatings of inmates who are thought to disrespect nursing staff are commonly considered as gallant gestures by security officers.

24. Officer Page left Mr. Thorne with Barkley and Moulton and walked, together with Nurse Frederica Hill and inmate Butler back to the EKG room.

25. Page and Hill heard the sounds of the beating back in the hallway.

26. FDOC Clerk-Typist Alma Kehl passed the two officers escorting Mr. Thorne.

27. In the hallway, across from the nurse's station, the two officers stopped and Officer Moulton asked Sgt. Barkley." Do you want to take him or should I?"

28. At that point, the two officers slammed Mr. Thorne against the wall and repeatedly beat him in the back, ribs, face, and mouth.

29. The beating was visible from the nurse's station and the sounds of the beating, including open-handed slaps, echoed up and down the hallway.

30. Witness Alma Kehl heard the sounds of the beating and walked back down the hallway to see what was happening.

31. As she looked from the nurses' station, Ms. Kehl saw a white officer, Officer Moulton, holding Mr. Thorne, still handcuffed, so that he was facing the wall.

32. Ms. Kehl saw an African-American officer, Sgt. Barkley, punching Mr. Thorne with his fists in Mr. Thorne's lower back.

33. Corrections Officer Moulton also stood by and failed to intervene, though he had the ability to do so, while Sgt. Barkley beat Mr. Thorne.

34. Corrections Officer Moulton also beat Mr. Thorne.

35. Sgt. Barkley stood by and failed to intervene, though he had the ability to do so, while Officer Moulton beat Mr. Thorne.

36. Mr. Thorne received a lacerated lip, a puffy right eye and a bruised face and ribs.

37. After being beaten, Mr. Thorne was taken to apologize to Nurse Harrell for being disrespectful to her.

38. Officer Page and Nurse Hill passed by Mr. Thorne and saw that he now showed injuries from a beating but said nothing and did not report the incident.

39. Nurse Tina Harrell did a pre-confinement physical and although Thorne's injuries were visible to her, wrote in her report that Mr. Thorne had no injuries.

40. Defendants Norman Dunaway and Jeffrey Brown were called to the medical building to take Mr. Thorne to confinement.

41. Defendants Dunaway and Brown could see that Mr. Thorne had injuries consistent with being beaten.

42. Defendants Dunaway and Brown did not report the injuries and later denied seeing any injuries to Mr. Thorne.

43. Ms. Kehl reported the abuse and saw and identified Defendant Barkley in person

as the man she saw beating Mr. Thorne.

44. After about two hours, Mr. Thorne was brought to the Colonel's office to see Inspector Robert Lancaster and two other Inspectors from the Department of Corrections Office of the Inspector General.

45. The Inspectors said they learned of the beating incident and were there to help.

46. Mr. Thorne told the Inspectors what had happened and he was then taken back to medical to have his injuries photographed and otherwise documented.

47. Mr. Thorne's second physical examination revealed an abrasion to his lip and swelling around his right eye.

48. The nurses and corrections officers failed to report the beating of Mr. Thorne to any superior officer in obedience to a long-standing custom at Florida Prisons and Apalachee Correctional Institution sometimes called "The Code of Silence."

49. It was implicitly understood by each of the nurses and officers that if none of the others mentioned the beating, then no one would be punished since no one would believe the word of an inmate standing alone.

50. Clerk-Typist Alma Kehl was the only employee to report the beating although the other employees, including Defendants, were aware of it.

51. Ms. Kehl's description of the time, place and manner of the beating matched that of Mr. Thorne although she had no opportunity to collaborate with him.

52. Warden Palmer knew the officers involved were frequent users of force.

53. Warden Palmer had no other reasonable explanation for the marks of the beating

that were visible to any observer other than that he was beaten by officers.

54. Warden Palmer knew Mr. Thorne had visible marks of a beating and that Clerk-Typist Alma Kehl had seen him beaten and that the sounds of the beating were audible and that her description of the place, time and manner of the beating matched that of Mr. Thorne.

55. Warden Palmer knew that multiple employees had seen Mr. Thorne with the marks of the beating but Warden Palmer imposed no discipline or re-training.

56. As a direct and proximate result of the wrongful acts alleged above, Plaintiff suffered bodily injury and resulting pain and suffering, disability, humiliation, and mental anguish. These injuries and losses are permanent and continuing, and Plaintiff will suffer such losses in the future.

## I. Constitutional Violations under 42 U.S.C. 1983 against Defendants Barkley, Moulton, Page, Hill, Dunaway, Brown, Harrell, and Palmer

57. Plaintiff realleges the General Allegations as if fully set forth herein.

58. The actions of the Defendants Barkley, Moulton, Page, Hill, Dunaway, Brown, Harrell, and Palmer, in physically abusing, failing to intervene in the physical abuse of Plaintiff, and in covering up were violations of the Eighth and Fourteenth Amendments to the U.S. Constitution.

59. The misconduct of the Defendants was under color of state law by state actors, within the course and scope of their employment, making Defendants liable to Plaintiff under 42 U.S.C. 1983.

60. The force used by Defendants Barkley and Moulton was inflicted as gratuitous punishment and violated universally accepted standards of decency and amounted to cruel and unusual punishment.

61. Barkley and Moulton each observed all or part of the abuse by the other and failed to intervene to protect Plaintiff from the abuse though able to do so.

62. Defendants actions caused injuries to Plaintiff as noted above.

63. As it was necessary for Plaintiff to hire the undersigned attorney to represent him, Plaintiff is entitled to an award of attorneys' fees and costs.

WHEREFORE, Plaintiff prays the Court enter judgment as requested below.

## II. Constitutional Violations under 42 U.S.C. 1983 against Defendant Warden John Palmer (Training, Supervision and Retention)

64. Plaintiff realleges the General Allegations as if fully set forth herein.

65. Defendant John Palmer, then-Warden of Apalachee Correctional Institution, is liable to Plaintiff for violation of the Eighth and Fourteenth Amendments to the U.S. Constitution for deliberate indifference in the training, supervision and retention of Defendants. Barkley, Moulton, Page, Hill, Dunaway, Brown, and Harrell and in condoning, acquiescing in, and ratifying their abuses.

66. The facts support an inference that Warden Palmer knew the defendant employees posed a serious risk of harm and was deliberately indifferent to that risk in failing to train, supervise, discipline, and terminate the employees.

67. Defendants actions caused injuries to Plaintiff as noted above.

68. As it was necessary for Plaintiff to hire the undersigned attorney to represent him, Plaintiff is entitled to an award of attorneys' fees and costs.

    WHEREFORE, Plaintiff prays the Court enter judgment as requested below.

### III.   Conspiracy to Violate Constitutional Rights under 42 U.S.C. § 1983 (Barkley, Moulton, Harrell, Page, Hill, Dunaway, Brown, and Palmer)

69. Plaintiff re-alleges the Common Allegations as if fully and set forth herein.

70. Plaintiff is entitled to relief against Defendants Barkley, Moulton, Harrell, Page, Hill, Dunaway, Brown, and Palmer because they intentionally and unlawfully conspired to physically abuse, acquiesce in abuse, and cover up abuse, contrary to the Eighth and Fourteenth Amendments to the U.S. Constitution.

71. In the course of the foregoing, these defendants, and two or more of them, entered into a conspiracy to prevent and hinder the constituted authorities from providing Plaintiff with due process of law.

72. Plaintiff is informed and believes and thereon alleges that Defendants Barkley, Moulton, Harrell, Page, Hill, Dunaway, Brown, and Palmer, acting in their individual capacities and under color of state law, did and caused to be done an act or acts in furtherance of the object of a conspiracy and acted in concert to undertake a course of conduct violative of plaintiff's constitutional rights by:

    a. Planning the physical abuse of Plaintiff;

    b. Physically abusing Plaintiff;

    c. Acquiescing in the physical abuse of Plaintiff;

    d. Covering up the physical abuse of Plaintiff.

73. As Defendants Barkley, Moulton, Harrell, Page, Hill, Dunaway, Brown, and Palmer acted with actual and legal malice as set out herein, Plaintiff is entitled to a substantial award of punitive damages.

74. Defendants actions caused injuries to Plaintiff as noted above.

75. Plaintiff has been forced to retain counsel to represent him to vindicate his rights. Pursuant to the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees as well as costs.

WHEREFORE, plaintiff prays the Court enter judgment as requested below.

### Prayer for Relief

WHEREFORE, the Plaintiff seeks judgment as follows:

  A. Compensatory damages against each of the defendants herein;

  B. Punitive damages against defendants sued individually;

  C. Attorney's fees pursuant to 42 U.S.C. §§ 1988 and costs of litigation;

  D. A trial by jury on all issues so triable;

                                       Respectfully Submitted,

                                       *s/James V. Cook*
                                       JAMES V. COOK, ESQ.
                                       Florida Bar Number 0966843
                                       Law Office of James Cook
                                       314 West Jefferson Street
                                       Tallahassee, Florida 32301
                                       (850) 222-8080; 561-0836 fax
                                       cookjv@nettally.com

Plaintiff has served the above document by Electronic Filing on 02/24/2013 on all attorneys of record registered to be notified by the CM/ECF electronic mail system and by U.S. Mail on all parties not so registered.

<em>s/James V. Cook</em>